UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

J'ZON M.,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00644 EAW

## INTRODUCTION

Represented by counsel, plaintiff J'zon M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 5; Dkt. 10) and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 5) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on September 11, 2020. (Dkt. 3 at 22, 153-54).[1]  In his applications, Plaintiff alleged disability beginning January 25, 2020.  (*Id.* at 22, 126).  Plaintiff's applications were initially denied on March 12, 2021, and upon reconsideration on August 16, 2021.  (*Id.* at 22, 191-200, 213-38).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Kim Griswold on June 21, 2022.  (*Id.* at 45-74). On October 4, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 19-44).  Plaintiff requested Appeals Council review; his request was denied on May 8, 2023, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-18). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff met the insured status requirements of the Act through June 30, 2020.  (Dkt. 3 at 25).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 25, 2020, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: seizure disorder; polysubstance disorder (cannabis abuse/misuse disorder continuous; documented benzodiazepine, cocaine and amphetamine abuse); bipolar disorder/depressive disorder; and cognitive disorder (math and verbal memory impairment).  (*Id.*).  The ALJ also found that Plaintiff suffered from the nonsevere impairment of history of left testicle hematoma.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  In particular, the ALJ considered the requirements of Listings 11.02, 12.04, and 12.11 in reaching her conclusion.  (*Id*. at 25-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following additional nonexertional limitations:

> [Plaintiff] cannot climb ladders/ropes/scaffolds.  He cannot tolerate exposure to hazards, such as dangerous moving machinery and unprotected heights. [Plaintiff] can understand remember and carry out simple instructions for routine tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis.   [Plaintiff] can respond appropriately to occasional interaction with the general public and coworkers for simple work related matters.   He cannot perform externally paced conveyor belt or assembly line work.  He can perform self-paced bench or table work with a range of expected production.  He can adapt to simple and occasional change and make simple and occasional decisions in the routine work setting.

(*Id.* at 27).  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 36).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of kitchen helper and linen room attendant. (*Id.* at 36-37). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 37).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision, arguing that: (1) the ALJ's RFC finding was not properly stated in functional terms with respect to Plaintiff's ability to maintain concentration; (2) the ALJ did not properly evaluate the impact of stress in relation to Plaintiff's refractory seizures; and (3) the ALJ did not properly evaluate the opinion of neuropsychologist Natalie A. Emmert, Ph.D. The Court is not persuaded by these arguments, for the reasons discussed below.

### A.   RFC Finding Regarding Ability to Maintain Concentration

"A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue." *Daniel G. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-1255 (MAD), 2020 WL 529886, at *8 (N.D.N.Y. Feb. 3, 2020). "[T]he ALJ's mental RFC finding 'must be expressed in terms of work-related functions.'" *Sanderson v. Astrue*, No. 08-CV-1177, 2011 WL 1113856, *4 (N.D.N.Y. Jan. 19, 2011) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *6).

Here, the ALJ concluded that Plaintiff had moderate limitations in sustaining attention and concentration and performing a task at a consistent pace, and accommodated

those limitations by including the following in the RFC finding: "He cannot perform externally paced conveyor belt or assembly line work.  He can perform self-paced bench or table work with a range of expected production."  (Dkt. 3 at 27, 32).  Plaintiff argues that "at no point did the ALJ explain what that meant functionally" and that it was "simply too vague for this Court to know that the ALJ and the vocational expert were actually speaking the same functional language when coming to the Step Five jobs."  (Dkt. 5-1 at 12).

The Court find this contention without merit.   As the Commissioner correctly argues, the phrase "self-paced bench or table work with a range of expected production" is self-explanatory, particularly where—as here—contrasted with externally paced conveyor belt or assembly line work.  (*See* Dkt. 10-1 ("The ALJ plainly indicated that while Plaintiff could not perform work that required him to keep up a pace determined by the speed of an assembly line, . . . he could perform the converse, *i.e.* work where Plaintiff can set the pace as long as he produces a set range of product[.]")).  Plaintiff has failed to articulate what additional explanation of this term could or should have been provided by the ALJ or to offer any plausible competing interpretations, and the VE gave no indication of any confusion or difficulty understanding it.  Plaintiff has also pointed to no case in which a court has found a limitation to self-paced table/bench work (as opposed to assembly-line work) impermissibly vague. *Cf. Fabian E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-187 (JLS), 2023 WL 5843529, at *2 (W.D.N.Y. Sept. 11, 2023) (affirming ALJ decision where the RFC finding excluded assembly-line work but included individual table/bench work); *Ronald Z. v. Kijakazi*, No. 1:20-CV-01792-MJR, 2022 WL 16959356, at *3 (W.D.N.Y.

Nov. 16, 2022) (same).

Nor is the Court persuaded by Plaintiff's contention that "[t]he ALJ failed to tether the conclusion that Plaintiff could perform 'self-paced bench or table work within a range of expected production' to the record in any way." (Dkt. 5-1 at 12). The ALJ explained that Plaintiff's attention and concentration were noted to be intact at neurological examinations on May 7, 2020, and July 30, 2020, but that consultative examiner Todd Deneen, Psy.D., had observed a mild impairment of attention and concentration on mental status examination. (Dkt. 3 at 32). "[V]iew[ing] the evidence in a light most favorable to [Plaintiff]" and to "account for possible distraction from psychological symptoms," the ALJ concluded that "[Plaintiff] cannot perform externally paced conveyor belt or assembly line work. However, [Plaintiff] can perform self-paced bench or table work with a range of expected production." (*Id.*). In other words, the ALJ identified the precise evidence of record on which she was relying in reaching her conclusions. The ALJ's RFC finding need not "perfectly correspond with any of the opinions of medical sources cited in [the] decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) ("The ALJ committed no error by determining the scope of Ramsey's RFC because that is his responsibility.").

Finally, the Court is not persuaded by Plaintiff's contention that "the jobs found at Step Five logically conflict with" the ALJ's conclusion that Plaintiff was capable of performing "self-paced bench or table work with a range of expected production." (Dkt. 5-1 at 14). Plaintiff points out that the representative occupations of kitchen helper and linen room attendant do not include bench or table work in their job description. (*Id.*).

However, an RFC finding represents "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). It does not logically follow that a claimant can <u>only</u> perform jobs at their maximum ability level. For example, the ALJ found that Plaintiff could "respond appropriately to occasional interaction with the general public and coworkers for simple work related matters." (Dkt. 3 at 27). That does not mean Plaintiff would be incapable of performing a job where he was not required to interact with the general public at all. Similarly, the fact that the ALJ concluded Plaintiff was capable of performing self-paced bench or table work does not mean that Plaintiff was incapable of performing self-paced work somewhere other than at a literal bench or table. Plaintiff has cited no cases in which a court has reversed an ALJ's decision because the representative occupations identified by the VE did not require the claimant to utilize the maximum extent of the RFC finding.

### B.   Evaluation of Stress

"[W]hen stress affects a claimant's ability to function, the ALJ must address any limitations explicitly and uniquely for that claimant." *Donna N. v. Comm'r of Soc. Sec.*, No. 5:21-CV-01264, 2023 WL 2742076, at *14 (N.D.N.Y. Mar. 31, 2023). In this case, the ALJ noted that Plaintiff's refractory epilepsy was associated with stress. (Dkt. 3 at 32). The ALJ also noted that an activities of daily living report indicated that stress would cause Plaintiff to "freeze[] up and become[] confused." (*Id*. at 29). The ALJ found that the impacts of stress could be accounted for by limiting Plaintiff to "adapting to simple and occasional changes and making simple and occasional decision[s] in the routine work setting[.]" (*Id*. at 32). The ALJ also limited Plaintiff to only occasional interactions with

coworkers and the general public "for simple work related matters." (*Id.* at 27).

Plaintiff argues that "[t]he ALJ here took no pains to discover Plaintiff's specific stressors yet concluded that [s]he adequately accounted for them." (Dkt. 5-1 at 16). The Court finds this argument without merit. The record contained an activities of daily living report that specifically discussed Plaintiff's ability to handle stress, stating that stress would cause Plaintiff to "freeze up" and "become confused." (Dkt. 3 at 437). The same form reported that Plaintiff would experience a "panic anxiety attack" when he would "try to think or have a conversation with someone" and that getting confused would cause him to "freak out trying to process things." (*Id.* at 427). The ALJ reviewed and expressly discussed this form in assessing Plaintiff's RFC. (*Id.* at 29).

It was logical for the ALJ to conclude, based on the evidence of record, that the impacts of stress on Plaintiff's functioning could be accommodated by keeping his work environment—including decision-making and interactions with others—simple and non-confusing. The ALJ adequately accounted for Plaintiff's stress-related limitations in her RFC finding. *See, e.g., Blocker v. Saul*, No. 18-CV-6788F, 2020 WL 1047737, at *6 (W.D.N.Y. 2020) ("[T]he ALJ accounted for Plaintiff's stress limitations by incorporating into Plaintiff's RFC limitations to simple routine tasks, occasional interaction with coworkers and the general public, and low stress work defined as work involving only occasional decision making. . . . [S]uch limitations have routinely been found to adequately account for a marked limitation in dealing with stress." (internal quotation marks and citation omitted)).

C.      **Assessment of Dr. Emmert's Opinion**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56.   Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a).  With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  With respect to consistency, "[t]he more consistent a medical opinion(s)

or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* at §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id.*

Dr. Emmert performed neuropsychological evaluations of Plaintiff in February and April of 2022. (Dkt. 4 at 132-36). Dr. Emmert opined that Plaintiff's "cognitive impairments (particularly verbal memory impairment) suggest he may have difficulty being successful in competitive employment at the present time, especially without the presence of work accommodations or other supports." (*Id.* at 136). The ALJ found this opinion to be of little persuasive value, explaining that "the neurocognitive testing resulted in generally low average to average deficits," that Plaintiff had intact basic comprehension on mental status exam, that Plaintiff had executive functions ranging from low average to high average, and that Plaintiff's "performance of below average to average on verbal intelligence measures and low average to average on nonverbal intelligence measures" was consistent with the ability to remember, understand, and carry out simple instructions for routine tasks throughout an ordinary workday with normal breaks. (Dkt. 3 at 34-35). The ALJ further noted that Plaintiff had a high average score in basic/focused attention, and

that there was "no consistent significant difference between performance on verbal . . . and nonverbal . . . intelligence measures." (*Id*. at 34-35).

Plaintiff argues that the ALJ had "dubious reasons" for finding Dr. Emmert's opinion to have little persuasive value and that "[i]n reinterpreting the comprehensive testing to reject Dr. Emmert's opinion, the ALJ is blatantly playing doctor—or in this case, playing neuropsychologist." (Dkt. 5-1 at 17-18). The Court disagrees. As an initial matter, the Court notes that Dr. Emmert did not, as Plaintiff seems to argue, conclusively opine that he could not succeed at competitive employment without accommodations or supports. To the contrary, her opinion stated only that he "may have difficulty being successful in competitive employment" without accommodations or supports. (Dkt. 4 at 136 (emphasis added)). The ALJ's RFC finding incorporated many nonexertional limitations precisely because of the same cognitive impairments that led Dr. Emmert to this conclusion. It is thus not even apparent that the ALJ's determination that Plaintiff was capable of a limited range of competitive employment is inconsistent with Dr. Emmert's opinion.

Further, the Commissioner's regulations expressly required the ALJ to consider whether Dr. Emmert's opinion was consistent with and supported by the medical evidence of record, including her own testing. The ALJ did not, as Plaintiff argues, reinterpret Dr. Emmert's testing. The ALJ instead appropriately discussed the results of Dr. Emmert's testing and concluded that they were inconsistent with her opinion. Specifically, the ALJ explained that Dr. Emmert's opinion that Plaintiff's verbal memory impairment could potentially require the use of accommodations or supports was inconsistent with the testing as a whole, which showed largely low average to average performance. An ALJ has the

discretion to find a medical opinion unpersuasive where it is contradicted by the source's own findings.  *See, e.g., Thomas C. W. v. Kijakazi*, 666 F. Supp. 3d 202, 218 (N.D.N.Y. 2023) ("the Court finds that the ALJ properly evaluated the supportability or lack thereof of the reaching limitation by citing Dr. Lorensen's own findings that Plaintiff had full range of motion in the upper spine, shoulders, elbows, forearms, and wrists").

The Court finds no error in the ALJ's assessment of Dr. Emmert's opinion.  For this, and the other reasons discussed above, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      June 10, 2024
            Rochester, New York